EDMUND G. BROWN JR.
Attorney General of the State of California
DANE R. GILLETTE
Chief Assistant Attorney General
GERALD A. ENGLER
Senior Assistant Attorney General
PEGGY S. RUFFRA
Supervising Deputy Attorney General
ALLEN R. CROWN
Deputy Attorney General
State Bar No. 56818
  455 Golden Gate Avenue, Suite 11000
  San Francisco, CA 94102-7004
  Telephone: (415) 703-5847
  Fax: (415) 703-1234
  E-mail: Allen.Crown@doj.ca.gov

Attorneys for Respondent

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **FELIPE ROCHA,**<br><br>                      Petitioner,<br><br>   v.<br><br>**ROBERT A. HOREL, Warden,**<br><br>                      Respondent. | C 07-3295 CRB (PR)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF ANSWER** |

### INTRODUCTION

California state prisoner Felipe Rocha has filed a petition for writ of habeas corpus in this Court raising the following federal constitutional claims: one, ineffective assistance of counsel; and two, improper denial of motion to substitute counsel.

### STATEMENT OF THE CASE

On December 3, 2003, the District Attorney filed an information in Del Norte County Superior Court accusing petitioner, Felipe Rocha, as follows: count one, assault by a non-life inmate with a deadly weapon or by means likely to cause great bodily injury in violation of California Penal

Code § 4501[1/] with a special allegation of great bodily injury in violation of § 12022.7; count two, battery with serious bodily injury in violation of § 243(d), with a special allegation of personal use of a deadly weapon within the meaning of § 12022(b), causing the offense to be a serious felony within the meaning of § 1192.7(c)(23); count three, participating in a riot in violation of § 405 with a special allegation of personal use of a deadly weapon within the meaning of § 12022(b), causing the offense to be a serious felony within the meaning of § 1192.7(c)(23); count four, possession of a weapon while confined in state prison in violation of § 4502(a). It was further alleged that petitioner was previously convicted within the meaning of § 1170.12 and § 667(b) to (i), and that petitioner was previously convicted and served a prison term within the meaning of § 667.5(b). 1 CT 16-18.

On October 4, 2004, the information was amended by dismissing counts two and three, and by striking the enhancement allegations under § 12022.7 and § 12022(b). Count four was renumbered as count two. 1 CT 144.

On October 5, 2004, the District Attorney withdrew the allegation that petitioner was previously convicted and served a prison term within the meaning of § 667.5(b). The issue of the remaining prior conviction allegation was submitted to the court without a jury. 1 CT 154.

On October 6, 2004, the jury returned guilty verdicts on counts one and two as charged, and the court found the remaining prior conviction allegation to be true. 1 CT 199, 201-02.

On November 4, 2004, the court sentenced petitioner to state prison for a term of eight years, consisting of double the midterm of four years for count one with double the midterm of six years for count two stayed under § 654, the term of eight years to be served consecutive to the term he was already serving. 1 CT 209-11.

On May 18, 2006, the California Court of Appeal, First Appellate District, affirmed the judgment. Exh. G.

On August 2, 2006, the California Supreme Court denied petitioner's petition for review. Exh. I.

---

1. Unspecified statutory references are to the California Penal Code.

1  On June 22, 2007, petitioner filed a petition for writ of habeas corpus in this Court.

2  On November 15, 2007, this Court issued an order to show cause.

### STATEMENT OF FACTS[2/]

**Prosecution Case**

On May 1, 2003, at approximately 9:45 a.m., Officer Gill saw two inmates at Pelican Bay State Prison attack two other inmates on Facility A Yard in front of Buildings 5 and 6. The two attacking inmates were Moya and petitioner, who was not a life prisoner. They were walking on the roadway near a picnic table where inmates Cuevas and Martinez were sitting. When petitioner and Moya were adjacent to the table and about fifteen to twenty feet away, they turned and ran right at Cuevas and Martinez. 1 RT 34-36; 2 RT 116. Officer Ruegsegger saw the two inmates on the roadway attack the two inmates at the picnic table. He yelled, "Get down, get down" very loudly into his microphone that sent the warning through a big loudspeaker. 1 RT 85, 87, 90.

Just before the attack it was really quiet. Officer Ochoa could hear Cuevas telling Moya in Spanish, "Don't do it, don't do it." Cuevas and Martinez were cell mates and Mexican Nationals, and were identified as Border Brothers; petitioner and Moya were cell mates and Hispanics from Southern California, and were identified as Southerners. Cuevas and Martinez did not do anything that morning to cause the fight to happen. 1 RT 53-56.

As Cuevas and Martinez jumped up, Moya attacked Cuevas while petitioner attacked Martinez. Cuevas and Martinez were protecting themselves by hitting petitioner and Moya back. Petitioner and Martinez fought, while Moya and Cuevas fought separately. Officer Ochoa yelled, "Get down." Officers Ochoa, Gardner, and Gill approached Moya and Cuevas, who were on the ground. Officers Ochoa and Gill sprayed Moya and Cuevas with oleo capsicum, also called pepper spray, to try to stop them from fighting. Moya and Cuevas separated, got down on the ground, and were later escorted off the yard. 1 RT 36-37, 55-57, 60-61, 70, 74, 76, 90.

As other officers were approaching Moya and Cuevas, Officer Hurt, with Officer Perez right behind him, ran toward where petitioner and Martinez were fighting about thirty feet from the

---

2. The state Court of Appeal's summary of the facts is set forth at Exh. G, 1-2.

other inmates. 1 RT 78-79, 81; 2 RT 126-27, 136-37, 139, 141. Officer Hurt saw that petitioner was on top of Martinez and was stabbing Martinez two or three times in the upper torso with a weapon that petitioner held in his right hand. Officer Hurt yelled that there was a weapon, yelled at the inmates to separate – which they did not do, and sprayed both inmates in their faces with pepper spray. 2 RT 127-28, 139. Officer Hurt saw petitioner throw a weapon about fifteen feet away. Petitioner and Martinez continued to fight while Officer Hurt and Officer Perez sprayed them with pepper spray. 1 RT 91; 2 RT 127. Officer Perez did not see petitioner stab Martinez and did not see any weapons. 1 RT 82. When petitioner and Martinez separated, Officer Perez stayed with petitioner while Officer Hurt stayed with Martinez. Martinez did not get on the ground immediately, but backed away from petitioner. After Officer Hurt used his baton to strike Martinez, he got on the ground. 2 RT 127, 139-40. Martinez had blood on his shoulder. 1 RT 66.

Two weapons were recovered from the area where the four inmates were fighting. One weapon was recovered by Correctional Officer Gardner and fit into a sheath that was found in Moya's pocket. The other weapon was bigger and was recovered by Officer Gill about ten feet from Martinez; it was the one that Correctional Officer Hurt saw petitioner throw. 1 RT 37-39, 42, 64, 70-72, 74; 2 RT 115, 119, 121-22, 140.

Mary Statham, a licensed vocational nurse and senior medical technical assistant, came to the A yard and treated inmate Martinez for puncture wounds and scratches. 1 RT 45-46. Martinez had a puncture wound in the front of his chest. She could not determine the depth of that wound, so she had a doctor examine it. 1 RT 47. Martinez's puncture wounds would have been made with a weapon such as that found on the yard. 1 RT 50-51. Martinez's chest was bandaged, and he was taken off the yard in a wheelchair. 1 RT 41, 87-88.

The area where petitioner and Martinez were fighting and where Martinez got down on the ground was grassy with some patches of dirt. But it was not rocky, and they were not near any gravel. 1 RT 76, 86, 93-94; 2 RT 121-24, 141-42.

**Defense Case**

Angel Martinez, who was in prison for multiple burglaries, testified that he started the fight and struck petitioner first. He turned around, saw petitioner, hit him, and then they fought.

1  Nobody used any weapons. Martinez injured his arm when he fell down and hit the corner of the
2  concrete bench, which caused it to bleed. 2 RT 151-52, 164. The wound to Martinez's chest and
3  some of his other wounds were not from the fight that day with petitioner, but from before that day.
4  Martinez got the wound on his arm from hitting the corner of the concrete bench and scratches from
5  fingernails and from little rocks in the dirt and grass on the ground. 2 RT 154-56, 158, 162.
6  Martinez did not remember telling Sergeant Thomas that he hit petitioner because petitioner had
7  attacked him and violated his space. 2 RT 163.

8        Hector Alvarez, who was in prison for assault, murder, kidnaping, torture, aggravated
9  mayhem, and conspiracy, testified that he did not see any weapons when petitioner was fighting with
10 another inmate. 2 RT 167-68. Brent Marsh, who was in prison for murder, robbery, and being a
11 felon in possession of a firearm, did not see any weapons or blood when petitioner was fighting with
12 another inmate. 2 RT 172-73. Francisco Cuevas, who had been convicted of multiple burglaries,
13 testified that he did not understand English. 2 RT 175, 184.

14       John Fay, the defense investigator, presented an enhanced videotape of the fight. The
15 enhanced videotape was blurry, but Fay believed it showed that Martinez was on top of petitioner.
16 2 RT 183, 185-87, 190. When Fay took statements from Cuevas, they both spoke English without
17 an interpreter. 2 RT 184, 191-92, 194. Cuevas said that the fight between the four inmates was a
18 misunderstanding and that there were no weapons used. 2 RT 192-93. Cuevas also said that
19 Martinez received injuries from popping his pimples and lesions. Cuevas never saw Martinez fall
20 against the edge of a concrete bench or table. 2 RT 193-94. Fay also took a statement from
21 Martinez, who said that he got his injuries from rolling on the pebbles and stuff on the ground but
22 never mentioned getting any injuries from the edge of a concrete bench or table. Martinez denied
23 that petitioner or anyone else stabbed him that day. 2 RT 194-95, 198.

24     **Rebuttal Evidence**

25       Ken Thomas, a Correctional Sergeant, testified that Martinez told him that he threw the
26 first punch because petitioner had violated Martinez's space. Thomas asked if that meant that
27 Martinez was attacked. Martinez said that, if you wanted to, you could say that. 2 RT 218-20.
28 Martinez said, "I turned around and he was coming at me so I swung first." 2 RT 220. When

Memorandum of Points and Authorities in Support of Answer - *Rocha v. Horel*, C 07-3295 CRB (PR)

Thomas asked Martinez how he got his scars, Martinez at first said from little pebbles on the ground in the grass. When Thomas asked about zits and lesions, Martinez said, "Yeah, that too." 2 RT 220.

Mary Statham testified that the wounds she saw on Martinez could not have been caused by falling on gravel or rocks on the lawn because they were puncture wounds. She did not think it was reasonable that Martinez used his fingers to open lesions on his arms and chest because he did not have any lesions – only puncture wounds and superficial scratches that were not caused by the edge of a concrete bench or table, but by a weapon like the two weapons that were found at the scene. 2 RT 226-27, 229-31.

## STANDARD OF REVIEW

A federal court may grant a writ of habeas corpus to a state prisoner only if the state court's rulings "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or were "based on an unreasonable determination of the facts in light of the evidence presented" in the state courts. 28 U.S.C. § 2254(d). Under the "contrary to" clause, a state court decision is contrary to federal law if it "contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). That test does "not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early,* at 8.

The ultimate controlling authority is the holding of the Supreme Court's cases at the time of the relevant state-court decision, not the dicta. *Williams v. Taylor*, 529 U.S. at 412. The state courts are presumed to "know and follow the law," and the standard for evaluating state-court rulings, which are given the "benefit of the doubt," is "highly deferential." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). "A federal court may not overrule a state court for simply holding a view different from its own, when the precedent from this Court is, at best, ambiguous." *Mitchell v. Esparza,* 540 U.S. 12, 17 (2003). In other words, "[i]f no Supreme Court precedent

creates clearly established federal law relating to the legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d 952, 955 (9th Cir. 2004).

In order to warrant habeas relief, the state court's application of clearly established federal law must be not merely erroneous, incorrect, or even "clear error," but "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003); *see also Williams v. Taylor*, 529 U.S. at 409; *Woodford v. Visciotti*, 537 U.S. at 24. It is the habeas petitioner's burden to make that showing. *Woodford*, at 25. In the same way, a "decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Miller-El v. Cockrell,* 357 U.S. 322, 340 (2003). State court factual determinations are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

When there is no reasoned opinion from the highest state court to consider petitioner's claims, the federal court looks to the last reasoned state court opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir. 2000).

Petitioner's claims, as identified below, fail as a matter of law under the AEDPA standards. The petition should accordingly be denied.

### CLAIM ONE

**PETITIONER'S CLAIM OF DENIAL OF EFFECTIVE ASSISTANCE OF COUNSEL IS WITHOUT MERIT**

In claim one, petitioner contends that he was denied effective assistance of counsel. Pet., Attachment A. This claim is without merit because petitioner has failed to show that the state appellate court made an objectively unreasonable application of clearly established United States Supreme Court precedent or that the state appellate court decision was based upon an unreasonable determination of facts. Moreover, due to the overwhelming evidence of petitioner's guilt, he was not prejudiced by defense counsel's alleged failure to file a motion to discover Officer Hurt's personnel file to determine if he had previously fabricated charges against other inmates.

The United States Supreme Court's decision in *Strickland v. Washington*, 466 U.S. 668

1  (1984), set forth the standards for establishing ineffective assistance of counsel. Petitioner must first
2  show deficient performance by counsel. This requires a showing counsel made errors so serious that
3  counsel was not functioning as the "counsel" guaranteed to a defendant by the Sixth Amendment.
4  *Id*., 687. Second, petitioner must show the deficient performance prejudiced the defense. This
5  requires showing counsel's errors were so serious as to deprive petitioner of a fair trial. *Id*. With
6  respect to attorney competency, judicial scrutiny of counsel's performance must be highly
7  deferential. Every effort must be made to "eliminate the distorting effects of hindsight" and to
8  evaluate the conduct from counsel's perspective at the time. *Id*., 689. A reviewing court must
9  indulge a strong presumption that counsel's conduct falls within the wide range of reasonably
10 professional assistance. *Id*.

11  The state appellate court denied petitioner's claim of ineffective assistance of counsel after
12 reasonably concluding as follows: "We cannot say here that defendant's counsel could have had
13 no rational tactical purpose for his failure to file a *Pitchess*[3] motion. He intended to pursue a
14 defense that [Officer] Hurt had been mistaken, rather than that he was a liar, a defense that made a
15 *Pitchess* motion unnecessary. We agree with the trial court that, on its face, this defense strategy
16 was not unreasonable." Exh. G, 4. The state appellate court also found that petitioner had failed to
17 show that defense counsel would have had good cause to bring such a discovery motion because
18 "defendant's unsupported speculation that [Officer] Hurt's personnel file might contain evidence
19 that he had fabricated charges against other inmates is insufficient to show ineffective assistance of
20 counsel." Exh. G, 4. In making these findings, the state appellate court correctly applied federal
21 constitutional standards in denying petitioner's claim of ineffective assistance of trial counsel. That
22 is, petitioner has failed to demonstrate that the state appellate court decision was contrary to clearly
23 established federal law or that the state appellate court decision was based upon an unreasonable
24 determination of facts. See *Yarborough v. Gentry*, 540 U.S. 1, 6 (2003) (per curiam).

25  Petitioner has failed to show that defense counsel's conduct was outside the range of
26 acceptable representation and that, had he done as petitioner contends he should, the jury would

27
28  3. *Pitchess v. Superior Court*, 11 Cal.3d 531 (1974).

have acquitted him. This Court should reject his claim and deny the petition.

## CLAIM TWO

### PETITIONER'S MOTION FOR SUBSTITUTE COUNSEL WAS NOT IMPROPERLY DENIED

In claim two, petitioner contends that his motion for substitute counsel was improperly denied. Pet., Attachment B. This claim is without merit because petitioner has failed to show that the state appellate court made an objectively unreasonable application of clearly established United States Supreme Court precedent or that the state appellate court decision was based upon an unreasonable determination of facts.

If the trial court fails to properly give the defendant an opportunity to state the reasons why substitute counsel should be appointed or fails to appoint substitute counsel when petitioner has demonstrated grounds therefor, reversal is required only if petitioner can show both counsel's deficient performance and prejudice so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment to the United States Constitution. *Schell v. Witek,* 218 F.3d 1017, 1027 (9th Cir. 2000) (en banc).

Petitioner argues that during the four hearings on his motions for substitute counsel the trial court improperly denied his motions. The state appellate court reasonably concluded that "Defendant has not shown an abuse of discretion here." Exh. G, 8. The state appellate court found that the trial court allowed petitioner to state his complaints, allowed defense counsel to respond point by point, and accepted defense counsel's explanations because he was credible. The state appellate court found that the trial court did not abuse its discretion by finding that there was no irreconcilable breakdown of the attorney-client relationship. Exh. G, 8. Petitioner does not cite United States Supreme Court precedent to the contrary.

The state appellate court correctly applied federal constitutional standards in denying petitioner's claim that his appointed counsel could not provide effective representation. That is, petitioner has failed to demonstrate that the state appellate court decision was contrary to clearly established federal law or that the state appellate court decision was based upon an unreasonable determination of facts. Petitioner has also failed to rebut the trial court's factual finding that defense

counsel was credible.  See 28 U.S.C. § 2254(e)(1).

Moreover, as explained above in response to petitioner's first claim, petitioner has failed to show that he was prejudiced under the *Strickland* standard.  That is, petitioner has failed to show that his attorney provided ineffective assistance at trial because petitioner has failed to show that the jury's decision would have been different if substitute counsel had been appointed.  This Court should reject his claim and deny the petition.

## CONCLUSION

Accordingly, for the reasons stated, respondent respectfully requests that the petition be denied with prejudice.

Dated:  December 10, 2007

Respectfully submitted,

EDMUND G. BROWN JR.
Attorney General of the State of California

DANE R. GILLETTE
Chief Assistant Attorney General

GERALD A. ENGLER
Senior Assistant Attorney General

PEGGY S. RUFFRA
Supervising Deputy Attorney General


/s/ Allen R. Crown
ALLEN R. CROWN
Deputy Attorney General

Attorneys for Respondent