IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

FELIPE ROCHA,                          )
                                       )
            Petitioner,                )        No. C 07-3295 CRB (PR)
                                       )
    vs.                                )        ORDER DENYING PETITION
                                       )        FOR A WRIT OF HABEAS
ROBERT A. HOREL, Warden,               )        CORPUS
                                       )
            Respondent.                )
_____    )

        Petitioner was convicted by a jury in the Superior Court of the State of

California in and for the County of Del Norte of assault by a prisoner with a deadly

weapon, Cal. Penal Code § 4501, and possession of a weapon while confined in

state prison, Cal. Penal Code § 4502(a).  The court also found that petitioner had

suffered a prior conviction.  On November 4, 2004, the court sentenced petitioner

to eight years in state prison, the term to be served consecutive to the term he was

already serving.

        Petitioner appealed and, on May 18, 2006, the California Court of Appeal

affirmed the conviction.  On August 2, 2006, the Supreme Court of California

denied review.

        Petitioner then filed the instant federal petition for a writ of habeas corpus

under 28 U.S.C. § 2254.  Per order filed on November 15, 2007, the court found

that the petition, liberally construed, stated cognizable claims under § 2254 and ordered respondent to show cause why a writ of habeas corpus should not be granted. Respondent filed an answer to the order to show cause and petitioner filed a traverse.

## BACKGROUND

The California Court of Appeal summarized the facts of the case as follows:

[Petitioner] was an inmate at Pelican Bay State Prison on May 1, 2003. When he and his cellmate, whose last name was Moya, were out in a yard, they attacked two other inmates. Moya fought with an inmate named Francisco Cuevas, and [petitioner] fought with Angel Martinez in a grassy area. One correctional officer, Stephen Hurt, saw [petitioner] on top of Martinez, stabbing Martinez in the torso with a weapon. FN3 He yelled, "weapon." Officers sprayed the inmates with pepper spray to separate them, and [petitioner] threw the weapon aside. On the ground between where the two pairs had been fighting, an officer saw a weapon known as a "shank," which was similar to an ice pick. Officers also found a second weapon within 10 or 12 feet of Moya, and a weapon sheath fitting the second weapon in Moya's pocket. There was blood on Martinez, and he was treated for puncture wounds and scratches of a kind that could have been caused by the weapons found on the ground.

> FN3  Seven other correctional officers testified at the trial. None of them mentioned having seen [petitioner] using a weapon, and at least four testified that they did not see a weapon used while the four inmates were fighting.

Martinez testified on [petitioner's] behalf that he had hit [petitioner] first, that no one used any weapons, and that his injuries were caused by a concrete bench, a fingernail, and the ground. FN4 A private investigator testified that Cuevas had told him no weapons were used during the incident, that the fight was "No big deal," and that Martinez's injuries came from pimples and lesions popping open. FN5 He also testified that Martinez had told him he received his puncture wounds from the grass, dirt, and rocks, and that [petitioner] had not stabbed him. Two other inmates testified that they saw the fight but did not notice any weapons, and one testified that he had been checked with a metal detector before going out on the yard that day.

> FN4  On rebuttal, an investigator testified that Martinez had told him he "swung first" because [petitioner] was "coming at [him]," and that Martinez did not provide a consistent story about the cause of his injuries.

> FN5  The licensed vocational nurse who saw Martinez after

2

1          the fight testified that his puncture wounds could not have
2          been caused by lesions coming open or by falling on gravel
           or rocks on the lawn.

3    People v. Rocha, No. A108363, 2006 Cal. App. Unpub. LEXIS 4349, at

4    **2-3 (Cal. Ct. App. May 18, 2006) (footnotes and footnote numbering in

5    original).

6                              **DISCUSSION**

7    **I.    Standard of Review**

8          This court may entertain a petition for a writ of habeas corpus "in behalf of

9    a person in custody pursuant to the judgment of a State court only on the ground

10   that he is in custody in violation of the Constitution or laws or treaties of the

11   United States."  28 U.S.C. § 2254(a).

12         The writ may not be granted with respect to any claim that was adjudicated

13   on the merits in state court unless the state court's adjudication of the claim: "(1)

14   resulted in a decision that was contrary to, or involved an unreasonable application

15   of, clearly established Federal law, as determined by the Supreme Court of the

16   United States; or (2) resulted in a decision that was based on an unreasonable

17   determination of the facts in light of the evidence presented in the State court

18   proceeding."  Id. § 2254(d).

19         "Under the 'contrary to' clause, a federal habeas court may grant the writ if

20   the state court arrives at a conclusion opposite to that reached by [the Supreme]

21   Court on a question of law or if the state court decides a case differently than [the]

22   Court has on a set of materially indistinguishable facts."  Williams v. Taylor, 529

23   U.S. 362, 412-13 (2000).  "Under the 'reasonable application clause,' a federal

24   habeas court may grant the writ if the state court identifies the correct governing

25   legal principle from [the] Court's decisions but unreasonably applies that principle

26   to the facts of the prisoner's case."  Id. at 413.

27

28                                      3

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.  A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable."  Id. at 409.

The only definitive source of clearly established federal law under 28 U.S.C. § 2254(d) is in the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision.  Id. at 412; Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003).  While circuit law may be "persuasive authority" for purposes of determining whether a state court decision is an unreasonable application of Supreme Court precedent, only the Supreme Court's holdings are binding on the state courts and only those holdings need be "reasonably" applied. Id.

## II.    Claims

Petitioner raises two claims for federal habeas relief under § 2254: (1) ineffective assistance of counsel and (2) improper denial of request for substitute counsel.

### 1.    Ineffective Assistance of Counsel

Petitioner claims that his attorney was constitutionally ineffective because he failed to file a Pitchess motion compelling discovery of Officer Hurt's personnel records in order to explore a "possible history of falsified information, planting evidence, [and] racial biases."  Pet. at A-7.  Under California law, a criminal defendant may compel discovery of police officers' personnel files by filing a Pitchess motion supported by affidavits showing good cause, materiality, and a reasonable belief that the agency has the information at issue.  See Cal. Evid.

4

1   Code. 1043(b)(3); <u>Pitchess v. Superior Court</u>, 11 Cal.3d 531 (1974).

2           To prevail on a claim of ineffective assistance of counsel, petitioner must

3   pass the two-part test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 687

4   (1984).  Petitioner must demonstrate that: (1) "counsel's representation fell below

5   an objective standard of reasonableness," and (2) "counsel's deficient performance

6   prejudiced the defense." <u>Id.</u> at 687-88.  Concerning the first element, there is a

7   "strong presumption that counsel's conduct falls within the wide range of

8   reasonable professional assistance." <u>Id.</u> at 689.  Hence, "judicial scrutiny of

9   counsel's performance must be highly deferential." <u>Id.</u>  The relevant inquiry is not

10  what defense counsel could have done, but rather whether the choices made by

11  defense counsel were reasonable.  <u>See</u> <u>Babbitt v. Calderon</u>, 151 F.3d 1170, 1173

12  (9th Cir. 1998).  To fulfill the second element, a "defendant must show that there is

13  a reasonable probability that, but for counsel's unprofessional errors, the result of

14  the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694.  A

15  reasonable probability is a probability sufficient to undermine the confidence in

16  the outcome.  <u>Id.</u>

17          The California Court of Appeal rejected petitioner's claim on the ground

18  that counsel had a rational tactical reason for not filing the motion - counsel chose

19  to pursue the defense strategy that Hurt's testimony was mistaken, rather than cast

20  him as a liar.  <u>Rocha</u>, 2006 Cal. App. Unpub. LEXIS 4349, at *6.  The court also

21  found that the record contained no evidence that petitioner would have had good

22  cause to bring such a motion and that petitioner's "unsupported speculation" that

23  Hurt's personnel file might contain evidence that he fabricated charges against

24  other inmates was insufficient to show ineffective assistance of counsel.  <u>Id.</u> at

25  **6-7.

26          The California Court of Appeal's rejection of petitioner's claim was not

27                                            5

28

contrary to, or involved an unreasonable application of, the Strickland standard, or was based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The record shows that counsel gave a reasonable explanation for his tactical decision to cast Hurt's testimony as mistaken rather than dishonest. In petitioner's September 20, 2004 Marsden hearing, petitioner told the court that his attorney failed to file a Pitchess motion. Resp't ex. B, vol. 13 at 78. Counsel explained that he didn't believe the potential evidence was important because he could show that Hurt's account was mistaken. Id. at 90. He explained that the surveillance tape would show petitioner on the bottom of the scuffle, not on top like Hurt had testified; other witnesses "watching him intently" would testify that they did not see any weapon; and Martinez would testify that he was the aggressor and that he was not stabbed by petitioner. Id. at 91. The court agreed:

> I think it's much smarter tactically to say the officer made a mistake and here's the proof and here's other testimony for the other officers and the other people . . . [counsel's] bottom line is even if it was successful he doesn't need it because he's got the other testimony . . . [t]hat seems to make sense to me the reason or the technical reason for doing it.

Id. at 100-01. Counsel was not ineffective for his strategic decision to cast Hurt's account as a mistake and not file a Pitchess motion. See Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994) (reasonable tactical decisions of trial counsel deserve deference); United States v. Mayo, 646 F.2d 369, 375 (9th Cir. 1981) (a difference of opinion as to trial tactics does not constitute denial of effective assistance).

Petitioner claims that the failure to file the motion prejudiced the trial outcome because Hurt's testimony was the only eyewitness evidence tying petitioner to the crime. But he sets forth no evidence whatsoever showing a reasonable probability that, but for counsel's failure to file a Pitchess motion, the result of the proceeding would have been different. See Strickland, 466 U.S. at

6

694.  There is simply no evidence, or even indication, that a <u>Pitchess</u> motion would have revealed any evidence of misconduct on the part of Hurt.

Petitioner is not entitled to federal habeas relief on this claim.

### 2. <u>Substitution of Counsel</u>

Petitioner claims that the trial court improperly denied his four requests for substitution of counsel because his relationship with his attorney was "embroiled in such an irreconcilable conflict that ineffective representation was likely to result." Pet. at B-23.

The denial of a motion to substitute counsel implicates a defendant's Sixth Amendment right to counsel and is properly considered in federal habeas.  <u>Bland v. California Dep't of Corrections</u>, 20 F.3d 1469, 1475 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Schell v. Witek</u>, 218 F.3d 1017 (9th Cir. 2000) (en banc).  The inquiry for a federal habeas court is whether the trial court's denial of or failure to rule on the motion "actually violated [petitioner's] constitutional rights in that the conflict between [petitioner] and his attorney had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment."  <u>Schell</u>, 218 F.3d at 1026.

The California Court of Appeal summarized the hearings petitioner received on his four requests for substitution of counsel under <u>People v. Marsden</u>, 2 Cal. 3d 118 (1970):[1]

> At a hearing on the first <u>Marsden</u> motion on July 22, 2004, [petitioner] complained that his counsel had not properly advised him of his right not to waive time; had not accepted his suggestions

---

[1]This California rule substantially parallels the federal rule.  See <u>Chavez v. Pulley</u>, 623 F. Supp. 672, 687 n.8 (E.D. Cal. 1985).

7

on handling the defense; and was not following up on possible witnesses, including an inmate witness who could testify that he did not see [petitioner] use or throw a weapon during the fight. He also wanted his counsel to file a motion based on the lack of evidence that he had committed a crime. His counsel, Patrick Foley, told the court he did not think the witnesses [petitioner] wanted were relevant to the issues of the case; that he intended to call all helpful witnesses; and that he had gone to the prison seven or eight times to visit [petitioner]. He also said that based on something that had happened when he met with [petitioner], he would have an ethical problem with putting [petitioner] on the stand. The trial court denied the <u>Marsden</u> motion, indicating [counsel] was making efforts on [petitioner's] behalf and that they should be able to work together.

A hearing on [petitioner's] second <u>Marsden</u> motion took place on August 26, 2004. [Petitioner] complained that [counsel] had not moved to show there was insufficient evidence to proceed with the case; that [counsel] had told him the preliminary hearing was a formality; that [counsel] had not moved to dismiss due to discriminatory prosecution; and that [counsel] had not subpoenaed a witness he believed would be helpful. He also complained of [counsel's] unwillingness to put him on the witness stand, stating that he could no longer confide in [counsel]. Furthermore, according to [petitioner], [counsel] had been trying to intimidate him into accepting a plea bargain. [Counsel] responded that the motions [petitioner] wanted him to file would not be useful and would waste the court's time, and that the testimony of the witness [petitioner] wanted him to call could easily be impeached on cross-examination. He indicated he had visited [petitioner] as much as he had seen most of his other clients, that they had discussed all the options, and that although he had told [petitioner] it was "kind of foolish" to turn down a plea offer, he did not tell him he had to take the deal. He thought [petitioner] had a triable case and was happy to proceed with it. The trial court denied the motion, noting that [counsel] was an experienced defense attorney who worked diligently for his clients.

At the September 16, 2004, hearing on the third <u>Marsden</u> motion, [petitioner] complained that [counsel] was not coming to see him; that [counsel] would not meet with him unless a defense investigator was present; that [counsel] had not given him documents he had requested, including witness statements; that [counsel] had not subpoenaed the doctor who treated Martinez at the hospital; and that [counsel] had not filed various motions [petitioner] wanted, including a <u>Pitchess</u> motion and a motion to dismiss the case on the ground that the statements Hurt had made in the preliminary hearing were inconsistent with the videotape of the incident. [Petitioner] also complained that [counsel] was sympathetic to the prosecution; that he refused to call Hurt a liar; that he was unwilling to put [petitioner] on the witness stand at trial; and that he had shown the prosecution an enhanced videotape of the incident before showing it to [petitioner]. [Counsel] told the court that he saw no basis for the

8

1    motions [petitioner] wanted him to file and that he thought he had
     given [petitioner] all of the witness statements.  He also said he was
2    unwilling to interview [petitioner] without the defense investigator
     present, saying "[petitioner] mixes up everything I say."  The trial
3    court denied the <u>Marsden</u> motion, stating that [counsel] was
     competent and able to proceed.
4
     [Petitioner] moved for substituted counsel for a fourth time on
5    September 30, 2004.  He indicated that he did not trust either
     [counsel] or the defense investigator, and complained again of
6    [counsel's] refusal to file motions and subpoena witnesses he had
     requested, of the fact that [counsel] had shown the enhanced
7    videotape to the prosecution, of [counsel's] refusal to visit
     [petitioner], and of his refusal to put [petitioner] on the witness stand.
8    In particular, he explained that he wanted [counsel] to file a <u>Pitchess</u>
     motion.  He argued that Hurt's testimony contradicted the videotape
9    and the testimony of other witnesses, and suggested that Hurt might
     have a tendency to lie.  He also read from a letter [counsel] had sent
10   to him indicating [petitioner] had received copies of all transcripts
     and that [counsel] would not meet with him again before trial
11   because it would not be productive.

12   [Counsel] told the court he did not think meeting with [petitioner]
     would be productive because "we've gone over this thing about the
13   motions too many times and he's not really listening to me."  The
     trial court agreed with him that no available motion would cause the
14   case to be dismissed.  [Counsel] said he had visited [petitioner] in
     prison approximately 10 times and was ready to go to trial.  He
15   explained that the testimony of Moya, whom [petitioner] wanted him
     to subpoena, would conflict with Martinez's testimony that he had
16   not been stabbed; that he was concerned that if he subpoenaed the
     doctor who treated Martinez, he might "make [the prosecution's] case
17   for them"; and that the in limine motions [petitioner] wanted would
     be meritless.  As to the videotape, [counsel] explained that he had
18   shown it to representatives of the district attorney in an attempt to
     persuade them to dismiss the case.  [Counsel] also told the court that
19   if [petitioner] took the stand, ethical concerns would prevent
     [counsel] from asking him any questions.  He told the court he
20   thought he could continue with the case and that there was a good
     chance of an acquittal.  The trial court denied the motion, telling
21   [petitioner] that he could testify in the form of a narrative and
     concluding that the breakdown in communications was not so
22   irreconcilable [counsel] could not provide effective assistance.

23   <u>Rocha</u>, 2006 Cal. App. Unpub. LEXIS 4349, at **8-13 (footnote omitted).

24          The California Court of Appeal rejected petitioner's claim on the ground that

25   there was no irreconcilable conflict between petitioner and his attorney.  <u>Id.</u> at *16.

26   The court explained:

27                                          9

28

1                     Our review of the transcript of the four [Marsden] motions indicates
that the trial court allowed [petitioner] to express his concerns and
inquired into them.  Where [petitioner] and his counsel disagreed on
trial strategy, [counsel] explained his strategy.  The trial court could
reasonably accept both those explanations and [counsel's] statements
that he had visited [petitioner] numerous times in prison and further
visits would not be productive.  Nor do [counsel's] ethical concerns
about questioning [petitioner] on the witness stand indicate an
irreconcilable breakdown of the attorney-client relationship.
[Petitioner] was given the option of testifying in the form of a
narrative, and the trial court did not abuse its discretion in accepting
[counsel's] assurances that he could provide an effective defense.

Id. at **15-16.

       The California Court of Appeal's rejection of petitioner's claim was not

contrary to, or involved an unreasonable application of, clearly established Supreme

Court precedent, or was based on an unreasonable determination of the facts.  See

28 U.S.C. § 2254(d).  Counsel told the court that he visited petitioner ten times in

prison.  Resp't ex. B, vol. 13 at 94.  He reported seeing petitioner "as much as I've

seen most of my other clients."  Resp't ex. B, vol. 12 at 53.  Counsel stated that he

could "effectively represent" petitioner because it was a viable case he expected to

win.  Resp't ex. B, vol. 13 at 99.  And both counsel and petitioner represented to the

court that they would be ready to go to trial if the court denied the substitution

motion.  Id. at 98-99.  The record does not show a conflict resulting in a total lack

of communication or significant impairment in the relationship between petitioner

and counsel such that petitioner was effectively deprived of counsel.  See Schell,

218 F.3d at 1026; compare Stenson v. Lambert, 504 F.3d 873, 886-887 (9th Cir.

2007) (no irreconcilable conflict where defense counsel refused to pursue

defendant's suggested trial strategy that counsel did not believe would succeed and

defendant and second-chair attorney were still communicating with each other),

with Brown v. Craven, 424 F.2d 1166, 1170 (9th Cir. 1970) (sufficient evidence of

irreconcilable conflict found where defendant was forced to trial with assistance of

10

1    lawyer with whom he would not, in any manner whatsoever, communicate).

2          Petitioner alleges that there was a conflict because counsel refused to see

3    him on several occasions.  But counsel explained that meetings were no longer

4    productive because they kept discussing the same meritless motions.  Resp't ex. B,

5    vol. 13 at 94.  Counsel was willing to meet with petitioner with his investigator

6    present because petitioner "makes mistakes as to what I say about everything,"

7    Resp't ex. B, vol. 15 at 34, but petitioner did not want the investigator present.  Id.

8    at 35.  There is no evidence in the record indicating that counsel refused to meet

9    with petitioner, only that he required the investigator to be present to account for

10   what was said during the meeting.

11         Counsel made necessary efforts to represent petitioner - he met with

12   petitioner, was willing to continue meeting with petitioner with the investigator

13   present, was prepared to advocate for petitioner at trial, and expected to win.  The

14   court agreed:

15         [I]t sounds to me that [counsel] is prepared and that he knows what
       he's doing.  You may not agree with it.  But it sounds like he's . . .
16     prepared to go forward . . . the breakdown is not so irreconcilable
       that there's an actual conflict in representation such that you have
17     ineffective assistance of counsel.  Now, I think what you ought to do
       is that two of you talk again and try to come together for this trial
18     and be prepared to go forward.

19   Resp't ex. B, vol. 13 at 104-105.  Counsel's representation of petitioner at trial did

20   not constitute a deprivation of counsel in violation of the Sixth Amendment.  See

21   Schell, 218 F.3d at 1026.

22         Petitioner's claim that he did not trust his attorney does not compel a

23   different conclusion.  The Sixth Amendment guarantees effective assistance of

24   counsel, not a "meaningful relationship" between an accused and his counsel.

25   Morris v. Slappy, 461 U.S. 1, 14 (1983); see Plumlee v. Masto, 512 F.3d 1204,

26   1211 (9th Cir.) (finding no 6th Amendment violation when defendant is represented

27

28                                         11

by lawyer free of actual conflicts of interest, but with whom the defendant refuses to cooperate because of dislike or distrust, cert. denied, 76 U.S.L.W. 3636 (2008). Although petitioner and counsel disagreed at times, petitioner's lack of trust, without evidence of an actual conflict leading to a total breakdown in communication, is insufficient to warrant relief. See Plumlee, 512 F.3d at 1211; Schell, 218 F.3d at 1026.

Petitioner is not entitled to federal habeas relief on this claim.

## CONCLUSION

For the foregoing reasons, the petition for a writ of habeas corpus is DENIED.

The clerk shall enter judgment in favor of respondent and close the file.

SO ORDERED.

DATED:  July 7, 2008

CHARLES R.  BREYER
United States District Judge

12